UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON and LISA MALIK,

       Plaintiffs,                            Case No. 1:07-cv-52

v.                                              HON. JANET T. NEFF

PALISADES COLLECTION, L.L.C., et al.,

       Defendants.
_____/

**OPINION**

Plaintiffs Jason and Lisa Malik, husband and wife, brought this action under the Fair Debt Collection Practices Act[1] (FDCPA) and the Fair Credit Reporting Act[2] (FCRA), proceeding pro se against ten defendants.[3] Defendant Allied Collections Service, Inc. (herein "Allied") filed a Motion for Judgment pursuant to FED. R. CIV. P. 12(c) or FED. R. CIV. P. 56 (Dkt. 52). Plaintiffs retained counsel in response to the filing of Allied's motion and were thereafter represented by counsel. Having fully considered the parties' motion briefs and exhibits, including plaintiffs' Supplemental Memorandum, the Court concludes that defendant Allied's motion for summary judgment is properly granted.

---

[1] 15 U.S.C. § 1692 *et seq*.

[2] 15 U.S.C.§ 1681 *et seq*.

[3] All but two defendants, Allied Collections Service, Inc. and Palisades Collection Service, L.L.C., have since been dismissed voluntarily or by stipulation.

I. Background and Facts

Plaintiffs' claims against Allied are based on the collection of an $80 debt Lisa owed to Desert Streams Christian Counseling Service in Kalamazoo for medical care. The underlying facts are set forth by the parties as follows (Def's. Br. 6-9; Pls.' Br. 8-9). Lisa filed a Chapter 7 bankruptcy in October 2005. She subsequently incurred an $80 debt with Desert Streams for services provided on 11/2/05, 11/9/05, 11/15/05, 12/19/05. The debt was listed with Allied on November 15, 2006.

Lisa received an initial letter from Allied regarding the debt in November 2006 (according to plaintiffs' amended complaint ¶ 117, Lisa received the letter on or about November 20, 2006).

Lisa disputed the Desert Streams debt and requested validation in November 2006 (plaintiffs' amended complaint, ¶ 118, states that Lisa sent her validation request on or about November 23, 2006). Within the 30-day period provided by law, Allied provided validation of the debt by mail to a post office box used by Lisa; the envelope was addressed to Lisa and Jason (according to plaintiffs' amended complaint ¶ 119, Lisa received the validation letter on or about December 8, 2006). Lisa and Jason are married and live in the same home, but maintain separate, individual mailing addresses. The validation included diagnosis codes and procedure descriptions (Pls.' Am. Compl. ¶ 120).

Allied first reported the debt to the credit reporting agencies on January 10, 2007, noting that the debt was "disputed." On January 13, 2007, Lisa sent an email to Allied, threatening a lawsuit and claiming that the debt was discharged in bankruptcy. Lisa paid the debt to Desert Streams in January 2007, by check dated January 11, 2007. On or about January 17, 2007, Lisa disputed the

tradeline Allied had placed on her credit report, and that same day Allied received a notice of her dispute ("CDV") through E-Oscar, which stated in part, "Consumer States/Comments . . . Claims paid the original creditor before collection status or paid before charge-off . . . Account included in bankruptcy." An Allied employee telephoned Lisa on January 18, 2007 and informed her that the debt was not discharged in bankruptcy and that it was still owing, to which Lisa responded that she had paid the debt "in January 2007." Plaintiffs filed this lawsuit on January 18, 2007. Allied received Lisa's check from Desert Streams on January 19, 2007.

With regard to the validation sent to Lisa's post office box, Lisa purports to aver[4] that in December 2006, she went to her post office box in Portage, Michigan, and obtained a letter from Allied addressed to her and Jason. She did not open the letter, but proceeded home and left the unopened letter on the counter. Jason opened the letter and left the mail for her to review. The letter was Allied's response to her validation request. (Pls.' Ex. B ¶¶ 4-7.) The letter contained "[Jason's] social security number, charges on his account and his treatment descriptions as well as [Lisa's] relevant information including [her] diagnosis codes and treatment descriptions" (Pls.' Ex. B ¶ 7).

## II.  Summary Judgment Standard

A motion for summary judgment is properly granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable

---

[4] These statements are contained in Exhibit B to plaintiffs' response brief, an "affidavit" by Lisa. The purported affidavit is signed by Lisa, but not dated or notarized.

3

inferences in favor of the nonmoving party. *Harbin-Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005).

### III.  Discussion

Plaintiffs alleged several claims against Allied, including federal claims of (1) violations of the FDCPA [Count 3]; (2) violations of the FCRA [Count 5]; and (3) invasion of privacy/false light (based on violations of the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 1320d *et seq.*) [Count 13].  They also alleged claims under Michigan law.

### A.  Count 3–FDCPA and Count 5–FCRA

A key issue in the claims against Allied was whether the $80 debt placed for collection with Allied was discharged in Lisa's Chapter 7 bankruptcy.  Plaintiffs maintained that Allied wrongfully pursued collection because this debt was incurred before Lisa's bankruptcy discharge, and thus, was discharged.  Contrary to plaintiffs' argument, the debts discharged are those that existed on the date the bankruptcy case was filed, i.e., prepetition debts.  It is undisputed that the $80 debt was not a prepetition debt, which Allied has contended all along.

In her communications with Allied, Lisa relied on *In re Madaj,* 149 F.3d 467 (6th Cir. 1998), as authority for her claim that her Desert Streams debt was discharged in bankruptcy.  As Allied's counsel pointed out to Lisa in a letter dated February 6, 2007 (Def's. Ex. G), *In Re Madaj* recognizes that a Chapter 7 bankruptcy discharges prepetition debt, not post-petition debt.

Pursuant to the Bankruptcy Code, 11 U.S.C. § 727, a Chapter 7 bankruptcy discharge discharges the debtor from all prepetition debts, unless the debt is specifically excepted from discharge under 11 U.S.C. § 523.  *In Re Madaj,* 149 F.3d at 469.  Subsection 727(b) provides: "Except as provided in section 523 of this title, a discharge under subsection (a) of this section

4

discharges the debtor from all debts that arose before the date of the order for relief under this chapter . . . ."  An order of relief is issued when the petition is filed:  "The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter." 11 U.S.C. § 301(b).

It is undisputed that the $80 debt at issue arose *after* Lisa filed her bankruptcy petition.  Lisa filed her bankruptcy petition on October 9, 2005; the debt was incurred on "11/2/05, 11/9/05, 11/15/05, and 12/19/05."  Accordingly, it was not discharged under the above provisions.  Plaintiffs' claims against Allied were in large part premised on their allegation that Allied falsely represented that the debt was owed when in fact it was discharged in Lisa's bankruptcy.  Plaintiffs are incorrect.

Plaintiffs' counsel concedes in the Response brief that defense counsel was correct in his reading of *In Re Madaj,* in that Lisa's debt was not subsequently included in her bankruptcy (Pls.' Resp. Br. 13).  Plaintiffs' counsel then states: "but in a more recent case the 6th Circuit has ruled that 'A Chapter 7 bankruptcy discharge discharges the debtor from all debts that arose before the date of the order for relief under this chapter . . . . 11 U.S.C. § 727(b),'" citing *Lohmeyer v. Alvin's Jewelers (In re Lohmeyer),* 365 B.R. 746, 749 (Bankr. N.D. Ohio 2007).  This argument is without merit.  The quote from *In re Lohmeyer* simply reiterates the Bankruptcy Code provision referred to in *In Re Madaj* and does not change the result.

Plaintiffs have produced no legal authority for their claim that the debt was discharged.  They have provided no evidence that the debt was discharged.  Plaintiffs have no actionable claims based on a discharge of the debt in Lisa's Chapter 7 bankruptcy.

Plaintiffs nevertheless attempt to maintain their FDCPA and FCRA claims based on several other violations by Allied. These arguments are unpersuasive, particularly given plaintiffs' lack of legal analysis and authority concerning the essential elements of their claims.

Plaintiffs contend that according to the industry manual, the "CDIA Manual," the credit limit section and terms section are to be left blank. Instead, Allied misrepresented the status of the debt by reporting it with terms of "1 month" and with a credit limit because Lisa never entered into any terms with Allied and was not extended credit by Allied. Allied contends in response that the credit limit section is supposed to be "zero filled" and the terms frequency is to be left blank. Allied asserts that it reported Lisa's information in accordance with the CDIA Credit Reporting Resource Guide/General Reporting Guidelines by inserting a "zero fill" in Field 11 to show that a "credit limit" did not apply and by leaving the "terms frequency" field blank to show there were no terms (Def's. Reply Brf. 4-5; Affidavit of Will Lichti, Def's. Reply Br., Ex. A). Allied states that any errors complained of by Lisa (perhaps made by Experian, the credit reporting agency) are beyond Allied's control and cannot be attributed to Allied.

Plaintiffs also contend that Allied misrepresented the subsequent account as "open" (Pls.' Br. 15). In reply, Allied provides the CDIA glossary of terms, and states that the term "open" applies to accounts where the entire balance is due on demand or that have one payment due as scheduled. Allied asserts that the term "open" is used by credit card reporters when there is no credit limit and the full balance is due each month, and is likewise used by collection agencies (Def's. Reply Br. 6 & Ex. C). Allied further asserts that as stated in the Lichti affidavit (Def's. Reply Br. 6, Ex A ¶ 9), Allied correctly reported the "Terms Duration" as "001," which means "one payment due," to indicate that the account was due upon demand.

Plaintiffs additionally claim that Allied changed information on Lisa's forms to backdate the information further. However, as Allied points out, a side-by-side comparison of the two reports shows no such backdating. The only difference between the two reports are the dates that they were obtained: one was printed on June 3, 2007 and the other was printed on June 21, 2007.

Plaintiffs have failed to establish their claims under the FDCRA and the FDCA based on the record before the Court. In the face of a properly supported motion for summary judgment, the party bearing the burden of proof must set forth a sufficient showing on each element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Plaintiffs have failed to make that showing. Further, if the evidence submitted by a nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *Anderson,* 477 U.S. at 249. Here, plaintiffs' evidence is, at best, merely colorable. Accordingly, Allied is entitled to summary judgment on these counts.

### B. Plaintiffs' Supplemental Memorandum

On May 20, 2008, the Court granted plaintiffs' request to file a supplemental memorandum in response to Allied's motion. With their memorandum, plaintiffs provided the affidavit of Kim Hughes, an employee of Experian. In her averments, Ms. Hughes briefly summarizes Allied's reporting of the debt to Experian. Plaintiffs assert that the affidavit illustrates that Allied inaccurately reported Lisa's credit report in certain respects. In response, Allied disputes any alleged inaccuracies and submits the affidavit of Will Lichti, Allied's Computer System Administrator, who avers that while Ms. Hughes' affidavit contains some correct facts, her interpretation of other facts is incorrect.

Even if a dispute exists concerning the coding or dates in the tradeline submission, plaintiffs fail to show that the disputed facts are material to the claims at issue. Accordingly, the supplemental

memorandum does not change the result. The Court finds no triable issue of material fact with regard to Allied's liability under the FDCRA and the FDCA. *Street,* 886 F.2d at 1477. Allied is entitled to judgment as a matter of law on these claims.

### C.  HIPAA and Count 13–Invasion of Privacy/False Light Claims

Plaintiffs' claims are based on Allied's alleged violations related to the disclosure of Lisa's medical information in the validation letter opened by Jason. Allied contends that no violation of HIPAA occurred because Allied, as an agent of the medical provider, is allowed to disclose protected health information pursuant to 45 C.F.R. § 164.502(a)(1)(i). This provision permits disclosure of protected health information to the individual. Plaintiffs do not dispute this contention. The crux of plaintiffs' argument is that the disclosure to Jason violated the HIPAA.

The factual basis of plaintiffs' claims is so unusual that it warrants only minimal consideration. First, plaintiffs assert that Lisa retrieved her mail from her personal post box, took the Allied letter home, placed it on the counter unopened, and Jason subsequently opened it because it was addressed to both of them. Accordingly, plaintiff allege that Allied is liable for the improper disclosure of her protected health information to Jason. However, the only evidence of this factual scenario is contained in plaintiffs' unnotarized, undated "affidavits" (Pls.' Resp. Br., Exs. B & D). This is insufficient to withstand summary judgment. While the nonmoving party need not "produce evidence in a form that would be admissible at trial," it still must present evidentiary materials, other than its pleadings, like those listed in FED. R. CIV. P. 56(c). *Celotex Corp.*, 477 U.S. at 324; see also *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997) (proffered evidence need not be in admissible form, but its content must be admissible).

Moreover, plaintiffs' factual allegations are so conflated that it is difficult to discern any claim for the improper disclosure of Lisa's protected health information. According to Lisa's "affidavit," the validation letter from Allied "included [Jason's] social security number, charges on his account and his treatment descriptions as well as [Lisa's] relevant information including [her] diagnosis codes and treatment descriptions (Pls.' Ex B ¶ 7). Jason's "affidavit" contains a similar statement (Pls.' Ex D ¶ 6). Jason further states that he informed his wife of the disclosure so she could respond to the letter "how she deemed appropriate" (*id.* ¶ 7). These statements seem to indicate that both Lisa and Jason were clients of Desert Streams and had been treated under one account. Additionally, plaintiffs' complaint states "On or around January 13, 2007, Plaintiff Jason telephoned Defendant Allied and informed them of the continued and unauthorized collection of the subsequent debt which was included in Plaintiff Lisa's bankruptcy" (Pls.' Am. Compl. ¶124). Under these circumstances, where plaintiffs apparently jointly treated at Desert Streams under a single account, and both pursued corrective action with Allied, the basis of Lisa's individual HIPAA and invasion of privacy/false light claims is questionable.

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact which requires the denial of a summary judgment motion." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir. 1989). Further, "the materiality of any fact should be determined by the substantive law of the case." *Id.* After reviewing the whole record, the court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52. Where the factual context makes a party's claim implausible, that party must come forward with

9

more persuasive evidence demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986); *Street,* 886 F.2d at 1480.  In this case, the factual context makes plaintiffs' claims implausible, and they have not come forward with sufficiently persuasive evidence showing a genuine issue for trial.

### C.  Plaintiffs' State Law Claims

Having disposed of the federal claims, the Court exercises its discretion under 28 U.S.C. § 1367(c)(3) and declines supplemental jurisdiction over the state-law claims.  See *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir.2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims.").

### IV.  Conclusion

For the foregoing reasons, this Court GRANTS defendant's motion for summary judgment of plaintiffs' complaint.  An Order will be entered consistent with this Opinion.

DATED:  June 10, 2008                          /s/ Janet T Neff
                                               JANET T. NEFF
                                               United States District Judge